# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEANIE SHURTZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NEWKIRK PUBLIC SCHOOLS, ) <br> INDEPENDENT SCHOOL DISTRICT ) <br> NO. 125, ) <br> ) <br> Defendant. ) | Case No. CIV-18-178-R |

## ORDER

Before the Court is the Motion for Summary Judgment filed by Defendant Newkirk Public Schools. (Doc. No. 46). Plaintiff responded in opposition to the motion and Defendant filed a Reply in support of its position (Doc.Nos. 52 and 53). Plaintiff's Amended Complaint included claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA"), the Oklahoma Anti-Discrimination Act ("OADA"), the Age Discrimination in Employment Act ("ADEA"), and the Family Medical Leave Act. ("FMLA"). The parties jointly agreed to dismissal of Plaintiff's FMLA claim on December 26, 2018 (Doc.No. 31). On November 18, 2019, after the summary judgment motion was fully briefed, the parties filed a Joint Stipulation of Dismissal with Prejudice further reducing the scope of Plaintiff's claims. As the Court interprets the parties' most recent filing, the only remaining claims are in Counts I and III: Plaintiff's assertion that Defendant violated the ADA by paying her lower wages than similarly situated coaches of athletes who were not disabled and that Defendant, in retaliation for Plaintiff's EEOC charge

alleging associational disability discrimination, decided not to rehire Plaintiff on a temporary contract for the 2017-2018 school year. (Doc.No. 55 and Doc.No. 12, ¶¶ 48, 66, and 73).[1] Upon consideration of the parties' submissions in light of the stipulations, the Court finds as follows.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249.

Plaintiff was employed by Independent School District No. 125 from 1990 until May 2016 on a Certified Employee Contract as a speech-language pathologist and special education teacher. During her tenure her salary was paid in accordance with the schedule for teachers with her years of experience and she was paid the 5% salary differential mandated by state law for special education instructors. Ms. Shurtz also served as the

---

[1] The Stipulation contains one inconsistency in that it identifies by claim, statute, and paragraph number, those claims that Plaintiff is no longer pursuing, and she does not include her ADEA retaliation claim in this list, although the Stipulation specifically dismisses the prayer for relief in paragraph 82 for "[a]ctual and liquidated damages as authorized under the ADEA." However, in a Motion to Continue filed on November 17, 2019, Plaintiff states that she "is pursuing claims of discrimination and retaliation under the Americans with Disabilities Act" and the proposed Final Pretrial Order indicates a similar limit. Accordingly, the Court confines it consideration to the ADA discrimination premised on the lack of extra-duty pay and the ADA retaliation claim.

Special Olympics coach for Newkirk, and it is this role that brings her before the Court. Ms. Shurtz contends that, because of her association with disabled students, unlike coaches for other sports, such as football and cheerleading, she was not paid an extra-duty stipend for her work with the Special Olympics athletes. She contends this disparity was the result of associational discrimination, which under certain circumstances is prohibited by the ADA.

Due to her dissatisfaction with the lack of extra-duty pay, on June 19, 2015, Plaintiff filed a Charge of Discrimination (Doc. No. 46-12). Therein she alleged that beginning on or about May 15, 2015, she was paid lower wages than similarly situated colleagues.[2] For the 2015-16 school year Plaintiff continued her fulltime employment with the District performing the same roles. She alleges that, starting on March 2, 2016 and continuing through the spring of that year, the principal of her assigned school, Jeff Wilson, inquired whether she would be retiring that year. Wilson allegedly suggested that Plaintiff could continue as a special education coach for a stipend similar to that received by the football and cheer coaches. As a result of the inquiries, which Plaintiff contends were made on multiple occasions, she amended her June 2015 EEOC charge on July 5, 2016, alleging that Mr. Wilson acted at the direction of then-superintendent Stanley and that he hinted on April 5, 2016, that Mr. Stanley wanted her to retire.[3] She asserted she was being discriminated against on the basis of her age or in retaliation for her prior EEOC charge.[4]

---

[2] Plaintiff's involvement with the Special Olympics began approximately two years after she started working at the District in 1990; she never received a stipend for her Special Olympics work.
[3] Pursuant to the November 18, 2019 Stipulation Plaintiff is no longer seeking relief under a theory that her substantive ADEA rights were violated by Wilsons' repeated inquiries.
[4] Plaintiff testified in her deposition that Mr. Brady Barnes, the incoming superintendent, visited her and suggested

3

Thereafter, Plaintiff continued her conversations regarding retirement and part-time work with the District, presenting an offer to Mr. Barnes on July 12, 2016, "Shurtz Modified Job Status/Duties Beginning 2016-2017 School Year." (Doc. No. 46-4, p. 1). Her proposal indicated that her modified status would continue for each school year through 2018-19, set out a salary and the number of days she was amenable to working and in what capacity, i.e. Special Olympics and Speech Therapist Support. *Id.* In response, Mr. Barnes informed Plaintiff that her proposal could not be accepted because the school could not give multiple year contracts, in addition, she was required to work 55% of the year to receive medical benefits, meaning she needed to work at least 90 days, not the 60 she suggested. *Id.* p. 3. In her response, Plaintiff indicated she had been offered a three-year agreement, although she could not recall by whom; she was open to a one-year agreement. She made suggestions to ensure her eligibility for retirement benefits, which proposal included not retiring. She indicated she planned to return full-time unless she and the District came to an agreement. *Id.* p. 5. Plaintiff and the District apparently came to an agreement and she submitted her resignation of her fulltime position in an undated letter. (Doc.No. 46-5).[5] The agreement resulted in a temporary contract for 72 days for a salary of $21,000.00. She acknowledged no continuing contractual rights and that the contract terminated at the end of the school year.

---

she retire in light of her eligibility for retirement, which would help with his budget for the upcoming year. (Doc. No. 46-1, pp. 94-95). She indicated he called her repeatedly over the summer suggesting she work part-time.

[5] Plaintiff's resignation letter identifies the adopted proposal as having been set forth in her August 4, 2016 email, accepted by Barnes the next day. Neither email is provided to the Court. The Newkirk School Board accepted Plaintiff's resignation on August 8, 2016, and hired her for the 2016-17 school year for "Speech/Olympic." (Doc. No. 46-6, pp. 2-3).

4

Plaintiff apparently performed the services under the temporary contract without incident, but on April 11, 2017 Superintendent Barnes informed Ms. Shurtz that she would not receive a contract for the 2017-2018 school year. Plaintiff testified that she asked him why, given his prior promise to keep her as long as he was there. Barnes allegedly responded, "that was then and this is now.' (Doc.No. 46-1, p. 113). Approximately five months later, on September 22, 2017, Plaintiff filed an Amended Charge of Discrimination asserting that Barnes's decision not to rehire her was in retaliation for her various EEOC filings. To that end, in support of her position that summary judgment is inappropriate, Plaintiff includes the declaration of Ronald Schieber, declaring that he inquired of Mr. Barnes why Ms. Shurtz would not be returning to the District. Mr. Barnes allegedly responded that he did not rehire Plaintiff because he was tired of her" lawsuit," including the time and expense it involved.[6]

As a result of the above, Plaintiff alleges that Defendant violated the anti-discrimination and anti-retaliation provisions of the Americans with Disabilities Act ("ADA"). Defendant seeks summary judgment on both of these claims.

The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To determine the viability of an ADA association claim in the absence of

---

[6] Presumably the "lawsuit" was actually a reference to Plaintiff's EEOC charges.

direct evidence of discrimination, the Court applies the *McDonnell Douglas* burden-shifting scheme. *See Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1082 (10th Cir.1997).

To establish a prima facie case of ADA association discrimination, Plaintiff must show that she was "qualified" for the job at the time of the adverse employment action, that she was subjected to adverse employment action, that she was known by her employer at the time to have an associate with a disability; and the adverse action occurred under circumstances raising a reasonable inference that the associate's disability was a determining factor in the employer's decision. *Id.* at 1085. As the Court noted in its Order denying the Motion to Dismiss as to Plaintiff's ADA claim, generally, there are three categories of associational discrimination. (Doc. No. 33, p. 5). The Tenth Circuit has recognized three categories of associational discrimination:

> "[The categories] can be illustrated as follows: an employee is fired (or suffers some other adverse personnel action) because (1) ("expense") his spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan; (2a) ("disability by association") the employee's homosexual companion is infected with HIV and the employer fears that the employee may also have become infected, through sexual contact with the companion; (2b) (another example of disability by association) one of the employee's blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability as well (maybe the relative is an identical twin); (3) ("distraction") the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer's satisfaction he would need an accommodation, perhaps by being allowed to work shorter hours."

*Trujillo v. PacifiCorp.*, 524 F.3d 1149, 1155 (10th Cir.2008) (quoting *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir.2004)). Clearly the alleged failure to offer extra-duty pay for coaching the Special Olympics does not fall into any of these categories.

Furthermore, although the Court's Order on the Motion to Dismiss cited an arguably broader interpretation of the associational discrimination set forth by the EEOC, nothing in those interpretations supports extension of § 12112(b)(4) to the facts supported by the evidence herein. (*See* Doc. No. 33, pp. 6-7). Here, Defendant hired Plaintiff specifically to work with children in special education, thus the scenarios anticipated by the EEOC and the extant caselaw are simply inapplicable.

Furthermore, even if Plaintiff could establish a prima facie case of associational discrimination, Defendant has articulated a legitimate non-discriminatory basis for not providing extra-duty pay for Special Olympics. Plaintiff admits that extra-duty pay for teachers was negotiated between the teachers' association and the Board, and that association, which bargained on behalf of teachers like Ms. Shurtz, never sought extra-duty pay for the otherwise volunteer position.[7] Plaintiff offers no evidence or argument that this explanation is pretextual. Defendant is entitled to summary judgment on Plaintiff's ADA claim.

Retaliation is prohibited by the ADA-under which "[n]o person shall discriminate against any individual because . . . such individual made a charge, . . . under [the ADA]." 42 U.S.C. § 12203(a)). Plaintiff filed three EEOC charges, asserting therein that she was subjected to discrimination in violation of the ADA, on the basis of associational discrimination, and her age, premised on the inquiries into whether she intended to retire. Plaintiff contends that the decision not to offer her a temporary contract for the 2017-2018

---

[7] Ms. Shurtz admits she was not forced to perform the role of coach but chose to continue doing so without pay because she did not want the program to fail.

7

school year was in retaliation for the first two charges she filed. Defendant argues Plaintiff cannot establish a prima facie case of retaliation and therefore the Court should enter summary judgment in its favor.

Defendant's motion approached the retaliation claim under the same burden-shifting analysis applicable to Plaintiff's ADA discrimination claim. Plaintiff's retaliation claim, however, is supported by direct evidence linking Plaintiff's EEOC charges to the decision not to re-hire her for the upcoming school year, specifically the statement of Ronald Schieber relaying Mr. Barnes' alleged statement that the "lawsuits" were the reason Ms. Shurtz was not returning. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1000 n. 8 (10th Cir. 2011)(noting that direct evidence is usually impossible to find and limited to admissions by the decision maker, i.e. "I fired him because he was too old.")(citations omitted). Where, as here, a plaintiff offers direct evidence of retaliation, "her claim may move forward without the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 1973)." *Tabor v. Hilti*, 703 F.3d 1206, 1216 (10th Cir. 2013).

In its Reply, Defendant asserts that the Court must consider "mixed motives" when Plaintiff has presented direct evidence of discrimination. Under this test, once the Plaintiff establishes that retaliatory animus was a motivating factor in the decision, the burden of persuasion shifts to the Defendant to prove it would have taken the same action absent the retaliatory motive. Although Defendant asserts that its decision not to re-hire Plaintiff for the subsequent year was premised on its finances, Plaintiff presents a newspaper article that rebuts the District's contention of budgetary concerns. Regardless, in *Gross v. FBL Financial Services*, 557 U.S. 167, 170 (2009), the Supreme Court eliminated the mixed-

8

motives analysis that circuit courts had brought into the ADEA from Title VII cases, holding that an ADEA claim requires proof of "but for" causation. *See id.* at 168. Subsequently, in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), the Supreme Court held that "but for" causation also applies to Title VII retaliation claims. Most recently, in *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018), the court, in an ADA retaliation claim, noted that the burden of establishing that the circumstances justify an inference of retaliatory motive is similar to establishing "but for" causation. *Id.* at 1209 ("The Supreme Court has likened this burden to a showing of 'but-for causation.'" (quoting *Nassar*, 570 U.S. at 460)). That said, Defendant's argument that Plaintiff must present evidence of pretext in this direct evidence case is misplaced. Rather, Plaintiff is entitled to proceed to the jury, which may assess whether Mr. Barnes' alleged admission establishes that but for Plaintiff's EEOC charges, Ms. Shurtz would have been given a temporary contract for the 2017-2018 school year.

For the reasons set forth herein, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's ADA associational discrimination claim but denied as to her ADA retaliation claim.

IT IS SO ORDERED this 19th day of November 2019.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE